## PURCHASE MONEY LOANED TO JOINT PURCHASER.

Circuit Court of Cuyahoga County.

CHARLES M. ALLEN v. EMMA H. ALSOP ET AL.

Decided, February, 1899.

*Equitable Liens—Joint Purchaser Loaning Purchase Money to Co-Purchaser Has no Lien on that Share.*

While it is true that the payment of an excess of purchase money in a joint purchase is sufficient to create an equity in the nature of a trust in favor of the paying purchaser against the other share, such is not the case where the purchaser does not pay the purchase money but loans it to the joint purchaser to be used by him in paying for his share.

*T. W. Shreve,* for plaintiff.
*Tuttle & Fillius,* contra.

LAUBIE, J. (sitting in place of Marvin, J.) ; CALDWELL, J., and HALE, J., concur.

This was a proceeding for the partition of premises consisting
of a house and lot in Cleveland, between the representatives of
two deceased owners, a brother and a sister, in each of whom, at
their deaths, was the legal title to one-half, in fee. The property
had been conveyed to the two some twenty-five years before upon
a joint purchase, after an agreement therefor, and after making
another brother, residing in Cleveland, an agent for the pur-
pose, the funds to be furnished by the brother, one-half on his
own account, the sister promising to repay her brother the
other half during her life, so far as she might be able without
inconvenience to herself, and that the balance should be paid
from her estate at her death. The purchase was made to fur-
nish joint homes for this sister and brother and another sister
and the husband of the latter during their lives, if the latter
sister should choose to occupy so long, but subject to termination
of her rights by her abandonment. Soon after the conveyance
and after a limited reimbursement of the brother, writings were
executed in which the terms of the undertaking was in part re-
cited and in part formally promised and in which the transac-
tion of furnishing so much of the money as was left unpaid was
mentioned as "loaned or advanced" to the sister to enable her
to pay off her half of the purchase money. The brother had
lived for many years in Pittsburgh where he carried on ex-
tensive business in which he was engaged until he died some two
years before the sister. The sister continued to occupy the
premises until her death but the other had abandoned it several
years before.

The sum paid was $32,500. For this sum the brother bought
in Pittsburgh, New York exchange payable to his own order
and sent it to the brother in Cleveland, endorsed payable to his
order, and with these funds the brother paid the purchase price
including as part of it the removal of an incumbrance of more
than $20,000.

At the time of the purchase the brother had in his hands
$2,500 of his sister's funds which was applied as of that date on
her share of the price and sometime afterwards she caused a fur-
ther sum of $3,500 to be paid, making in all $6,000 reimbursed

by her. No other sum was ever paid on the sum advanced, but during her life the brother released all interest accrued or afterwards during her life to accrue.

The representatives of the sister brought the suit and made the devisees and executors of the brother defendants. It was agreed that the property could not be divided and must be sold. The executors of the brother claimed a lien on the sister's share of the proceeds for the unpaid portion of the price.

There is in this case but one point in issue between the parties, or at least, there is but one point which should determine the case against the executors of Hussey and that point is, whether or not the executors of Curtis G. Hussey have a lien in equity on the property in question. It is claimed that they have, by reason of the fact that Mr. Hussey and his sister Mrs. Terrill bought the property together, and that Mr. Hussey paid more than his proportion of the purchase money.

That is the question in dispute; whether he did pay more than his proportion, more than his half of the purchase money, or not.

In the elaborate brief filed by counsel for the executors, this is stated as being a principle of equity upon which the executors rely for the purpose of establishing this lien or trust:

"It has long been a recognized principle of equity in the English law that the payment of an excess of purchase money in a joint purchase is sufficient to create an equity in the nature of a trust in favor of the paying purchaser against the other share. It was long ago held sufficient to take away the right of survivorship in what would otherwise be a joint tenancy."

Such was held in *Lake* v. *Gibson*, 1 Equity Cases Abridged, 290, 291; 2 Ves., Senior, 256.

Among the earliest cases I have found directly on the point in this country, is that of *Warfield* v. *Banks*, 11 Gill & John. Rep., 98. The case was one of partition between parties claiming and considered as tenants in common. The second point of the syllabus in that case is as follows:

"When one of the several joint purchasers of land pays more than his due proportion of the purchase money and the land is

afterwards sold for the purpose of distribution, the party making the excessive payment is entitled to be paid and the net balance only is to be distributed among the joint purchasers.''

There is no question whatever so far as the principle of equity is concerned, and no difference in regard thereto, between the English authorities and the American, that where the joint purchaser pays more than his share of the purchase money, and the title is taken in both or to all the joint purchasers, the title is held in trust for him who pays the most, to the extent of the excess which he has paid over and above his share of the purchase money.

Now, perhaps, the very statement that I have made is sufficient, but to make it more explicit, it is and has been always asserted that this payment must have been in. the character of purchaser, that he, as purchaser, paid more of the purchase money than was requisite to entitle him to the share agreed upon by the contract made between them. In other words, it must have been his money, and that is the only question here.

I do not understand there is any dispute between counsel as to the law or principle of equity, which requires that it shall have been payment of or by one of the joint purchasers—payment by him—of his money. And the only point really in dispute is as to the facts in the case; whether the money in the instance given was the money of the decedent, Curtis G. Hussey, at the time of payment, or the money of his sister, Jane R. Pettit.

The purchase price money was $32,500, and each party was to pay one-half. Mrs. Pettit was not able to pay more than $6,000, and the $10,500 remaining to complete her share of the purchase money was furnished by the decedent, Mr. Hussey. It seems that he, having a relative in this city, forwarded the money in the shape of drafts to his relative. a brother, and in doing this, he made and caused to be sent a separate draft for the $10,500 which he was advancing of the purchase money as and for Mrs. Pettit's share; if he was advancing it in the character of purchaser or was paying it in the character of purchaser as part of the purchase money to the seller, then, undoubtedly, he was entitled to this lien.

One thing to strike us at the very threshold of the case is, why he should make the distinction and send forward two drafts instead of one—why he should send forward in one draft especially the amount for which Mrs. Pettit was in default.

It is all explained—by the contract—if not presented by written contract, then subsequently by the parties.  And I have that original contract before us.  It recites the fact of this purchase, and then proceeds as follows:

"And whereas said Curtis G. Hussey and Jane R. Pettit were, according to an understanding between themselves, each to pay the sum of sixteen thousand two hundred and fifty dollars, making in the aggregate the said sum of thirty-two thousand and five hundred dollars, and each were and are entitled to a one-half undivided interest in the fee simple of. in and to said house and lot; and whereas said Jane R. Pettit was unable to pay more than six thousand dollars on account of her portion of the purchase money, without embarrassment to herself, therefore said Curtis G. Hussey, at the request of said Jane R. Pettit, loaned or advanced to said Jane R. Pettit the sum of ten thousand two hundred and fifty dollars to enable said Jane R. Pettit to pay off her share, the one-half of said purchase money of said house and lot."

Now, the language of the contract is in the past tense and it refers to the original contract and understanding between these parties in the purchase; what their agreement was when they made the verbal agreement which now has been reduced to writing, referring back to the time when they made the purchase, that instead of Mr. Hussey paying an excess of the purchase money to the seller over and above his own share, he was loaning and advancing money to Jane R. Pettit at her request to enable her to pay off her share of the purchase price.  So that there can be no dispute but what it was a loan from Mr. Hussey to his sister, Mrs. Pettit, to the amount of ten thousand two hundred and fifty dollars, and that is the reason why he sent it to his brother, his agent here, who was attending to the matter.

This contract, which can not be disputed and which can not be misinterpreted and about which there can be no doubt, differed from the oral testimony where the memory of witnesses may be so mistaken as to pervert the facts.  Here it is in writ-

ing, about which there can be no misinterpretation or doubt, and it was, that Mr. Hussey was loaning and advancing to Mrs. Pettit the money to enable her to pay for her share precisely as if she borrowed it from a perfect stranger to the transaction.

This is a complete statement of the whole case and ends it.

The authorities state explicitly that where money is loaned by one joint purchaser to another or to the other joint purchaser to enable him to pay his share of the purchase price, no trust arises. It is not a payment in excess on the share of the joint purchaser; it is merely a loan to the joint purchaser to enable him to pay off his share.

All the other papers in the case, and this contract itself, and subsequent parts of it, seem to recognize the fact that the parties themselves never contemplated that Mr. Hussey should have a lien upon the premises for this ten thousand two hundred and fifty dollars, but it expressly provides that Mrs. Pettit may pay the amount to him at such time and in such sums as she may be able to, and that, at her death, it shall be payable out of her estate; and two bonds were given; one corresponding with the date of this contract; the last bond that was given to take the place of the first, provides especially for the delay of payment until the death of Mrs. Pettit, when the amount is to be payable out of her estate; the first bond of October 1, 1870, refers to the contract itself and provides that the money shall be paid as specified in this contract.

The principle of equity to which I have referred has settled the case; there can be no lien because it was not Mr. Hussey's money that was paid, but it was Mrs. Pettit's, for which she was indebted to Mr. Hussey.

The decree in this case will be the same as entered in the court below.